UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| STATE OF LOUISIANA | * | CIVIL ACTION |
| | * | |
| VS. | * | NO. 6: 18-cv-174 |
| | * | |
| THE UNITED STATES OF AMERICA | * | SECTION ____ |

# COMPLAINT

Plaintiff, the State of Louisiana, appearing through its Attorney General, Jeff Landry, who is and has been at all times relevant to this matter constitutionally empowered to bring any claim necessary to protect any right or interest of the State, respectfully represents:

INTRODUCTION

1.

In the 1920s, landowners in Louisiana granted a limited right to the United States to build what became known as the Intracoastal Waterway. Over time the United States has failed to keep the waterway confined to the agreed to parcel of land. The waterway now extends outside of the bounds of the agreed to parcel of land and onto land owned by the State of Louisiana. Through this lawsuit, the State of Louisiana is seeking to prevent continued damage to the State of Louisiana's property.

## PARTIES

2.

Plaintiff, the State of Louisiana, holds a real property interest in certain property located in Vermilion Parish, Louisiana.

3.

Defendant, the United States of America, holds certain servitude rights affecting the real property owned by the State of Louisiana, as more fully set forth in this Complaint.

4.

Defendant, the United States of America, has breached and failed to fulfill its legal and nondiscretionary obligations to avoid abusing the property rights of the Plaintiff's neighboring estate. Specifically, Defendant has breached its legal duty to plaintiff by failing to confine the waterway in question to the parcel of ground upon which Defendant holds its servitude.

## JURISDICTION AND VENUE

5.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1346(b)(1), as the matter involves the loss of property resulting from wrongful acts of the federal government under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the law of Louisiana.

6.

Venue is proper in this District pursuant to 28 U.S.C. 1402(a)(1) as the Plaintiff, the State of Louisiana, resides in this District, and the property of the Plaintiff is situated within this District.

BACKGROUND

7.

Plaintiff, the State of Louisiana, is the record title owner of certain immovable property located in Vermilion Parish, State of Louisiana, having acquired title thereto as of July 8, 2002, which property comprises the area known as White Lake Wetlands Conservation Area (hereinafter the "White Lake Property").

8.

Defendant, the United States of America, is the possessor of the dominant estate under the Louisiana property law. Defendant holds a conventional predial servitude across a portion of the Plaintiff's immovable property. The express purpose of the servitude granted to Defendant was to construct, maintain, and operate a waterway known as the Intracoastal Waterway.

9.

In March 1925, the United States Congress approved the construction of and authorized funds for the construction of an Intracoastal Waterway from New Orleans, Louisiana, to Galveston, Texas.

10.

In furtherance of the congressional mandate for the construction of the Intracoastal Waterway, the United States obtained from Plaintiff's ancestors-in-title a conventional predial servitude across a portion of the White Lake Property, by an act dated February 26, 1928 (the "Intracoastal Waterway Servitude Grant").

11.

That servitude was limited to 300 feet in width.

12.

The servitude was therein described as:

> THAT CERTAIN TRACT OF LAND, situated in the Parish of Vermillion, State of Louisiana, known as Orange Land Company tract containing Seventy Thousand acres across and through the Northern portion thereof is hereby granted and donated **a strip of land three hundred feet wide with dumping privileges on either or both sides adjoining thereto, as located or to be located by the Engineer in charge; the said three hundred foot strip to measure one hundred and fifty feet from the center line North and South according to the Engineer's location, the dumping privilege here granted to be without limit. The said three hundred foot strip to begin on the Eastern Line of Section 25, Township 13 South, Range One West, on the Meridian Line North of the center of the Section 25 where a similar strip donated by L. O. Broussard et als terminates and runs in a Westerly North westerly direction** across the said Section 25, across the Northern part of Section 26 touching Section 23 at its Southwest corner and Section 27 at its Northeast corner thence across the Southern part of Sections 22 and 21 and continuing across Section 20 and Section 19 near the center, continuing in the same direction across the Northern portion of Section 24 Township 13 South, Range 2 West, across the Northeast corner of Section 23, the Southwest corner of Section 14, the Southern part of Section 15, across near the center of Section 17; thence across the Northern portion of Section 18 to the Cameron Parish line at the Northwest corner of Section 18, Township 13 South, Range 2 West, all as per plat of survey, LATEX 4/2 made by William P. Kemper July 17, 1926.

\* \* \*

> THIS GRANT, transfer and donation is made and accepted for and in consideration of the price and sum of NO DOLLARS **and the further benefits to accrue to the grantor in the added convenience for the use of said canal and the enhanced value that will result to adjacent lands, as the result of the construction and maintenance of said canal.**

(emphasis added).

13.

The Intracoastal Waterway Servitude Grant placed the following conventional conditions and obligations on the United States regarding the servitude across the White Lake Property:

> WHO DECLARED that for the consideration and on the terms and conditions hereinafter expressed he did and does by these presents grant, bargain, give, donate, convey, transfer, assign, et over and deliver unto THE UNITED STATES OF AMERICA, appearing herein through JOHN M. G. WATT Its successors and assigns, **for its use in constructing, improving and maintaining an Intracoastal Waterway from the Mississippi River at or near New Orleans, LA to Galveston Bay in the State of Texas**, in accordance with a project duly authorized by Congress, the perpetual right, servitude or easement to enter upon, dig, excavate or cut away and remove any or all or such of the hereinafter described tract of land as may be required at any time in the prosecution of the aforesaid work of improvement, or any enlargement thereof, **and to maintain the portion so cut away and removed as a part of the navigable waters of the United States**; and with said grant is also granted the further perpetual right, servitude or easement to enter upon, occupy and use such portion of said tract of land not so cut away and converted into public navigable waters as aforesaid, as may be required for the deposit of dredged material or earth, and for such other purposes as may be needful in the preservation and maintenance of said work of improvement, **reserving however to the grantor, their heirs and assigns, grantor its successors and assigns, all such rights and privileges in said tract of land as may be used and enjoyed without interfering with or abridging the rights and easements hereby conveyed to THE UNITED STATES OF AMERICA, the tract of land over which servitude is granted being described as follows…**

(emphasis added).

14.

By the terms of the July 8, 2002, transfer of title of the White Lake Property, the Plaintiff received all of its transferor's right, title, and interest in the property as burdened by "… all servitudes, permits, … canals and drainage ditches affecting the White Lake Property that are valid and existing and are duly of record or presently existing or affecting any of the White Lake Property…." The transfer thus included the Intracoastal Waterway Servitude dated February 26, 1928, and recorded in the public records of Vermilion Parish on March 22, 1929, in Conveyance Office Book 95, page 236.

15.

In October 1942, Congress appropriated funds to alter the original dimensions of the waterway from a 9-foot depth by a width of 100 feet to a 12-foot depth by a 125-foot width. As stated above, the original conventional servitude provided for a 300-foot wide parcel in which the waterway was to be constructed, maintained, and confined. No additional expansion of the dominant estate was necessary to accommodate the 1942 expansion of the waterway to the 125-foot width, nor was any expansion of the servitude granted thereafter to reach beyond the 300-foot width contemplated in the Intracoastal Waterway Servitude Grant.

PLAINTIFF'S CLAIMS

16.

Under the terms of the conventional servitude granted to the United States of America, it caused a waterway to be constructed across the property held by Plaintiff's ancestors in title. The Defendant continues to exercise legal possession and exclusive control of the waterway pursuant

to the permission granted by and under the conditions, limitations, and provisions of the conventional grant of servitude as set forth in the Intracoastal Waterway Servitude Grant.

17.

The Intracoastal Waterway has been in use and under the exclusive authority and control of the United States as the holder and possessor of the dominant estate since the completion of construction of the improvements and their placement into service as part of the congressionally mandated Intracoastal Waterway.

18.

Under the specific terms of the Intracoastal Waterway Servitude Grant and the substantive property provisions of Louisiana law, the Defendant has the specific, and nondiscretionary legal obligation to not cause damage to the Servient Estate and to restrict and confine its placement and use of any improvements installed in the dominant estate, including the waterway, to the area within the 300-foot parcel as described in the Intracoastal Waterway Servitude Grant.

19.

Under the specific, legal, and nondiscretionary obligations provided for in the substantive property law of the State of Louisiana, the Defendant, as the holder of the dominant estate, is required to not allow the works contained within the servitude to encroach upon and cause damage to the property of the Plaintiff.

20.

Defendant, the United States of America, as the holder of a neighboring estate under the conventional servitude, has breached and failed to fulfill its legal and nondiscretionary obligations

to avoid abusing the property rights of the neighboring estate owned by Plaintiff through Defendant's failure to confine the waterway to the parcel of ground upon which Defendant holds its servitude.

21.

The Intracoastal Waterway constructed, maintained, and operated by the Defendant upon the Plaintiff's property presently exceeds the dimensions, location, and limitations provided for in the Intracoastal Waterway Servitude Grant. The width of the waterway exceeds not only the 125-foot width authorized by Congress, but actually exceeds the 300-foot width of the entire servitude originally granted, as illustrated in this map depicting a section of the Waterway which cuts through the western area of the White Lake Property:



22.

In some areas, the width of the Waterway now exceeds 670 feet, instead of the 300 feet provided by the servitude, and appears to be continually growing larger.

23.

The continuing expansion of the Intracoastal Waterway unlawfully encroaches on the estate held by the Plaintiff to the detriment and interference of Plaintiff's lawful possession and enjoyment of its property.

24.

The expansion of the waterway to an area of the White Lake Property over which no servitude was granted has, since the commencement of the unlawful expansion, constituted and continues to constitute a continuing physical encroachment in violation of Defendant's legal duties owed to Plaintiff and further constituting an abuse of property rights by Defendant.

25.

Defendant has a duty to not encroach upon Plaintiff's property, has breached this duty by the waterway expanding beyond the bounds of the Defendant's servitude without Plaintiff's permission, and continues to breach this duty until the waterway is removed from the areas of Plaintiff's property over which no servitude was granted.

26.

As the holder of the dominate estate, Defendant has and continues to make use of the servitude in a manner that exceeds the boundaries established in the Intracoastal Waterway Servitude Grant, and is liable to the Plaintiff under the laws of Louisiana governing real property

and servitudes, as well as those laws governing the breach of obligations owed to the servient estate.

27.

Louisiana Civil Code arts. 667-669 require an owner or occupier to use its property in such a manner as to not injure another and specifically is not allowed to do real damage to its neighbor.

28.

La. C. C. art. 667 prohibits uses that cause damage to neighbors or deprive them of the enjoyment of their property.

29.

Injunctive relief is available to Plaintiff under Civil Code Article 667 because the encroachment by Intracoastal Waterway on the Plaintiff's neighboring property constitutes a continuing abuse of the right of ownership by Defendant as to Plaintiff and its estate.

30.

Defendant's waterway improperly and seriously injures the rights of Plaintiff as its neighbor, while of no benefit to it, causes damage to the neighboring estate of the Plaintiff.

31.

Plaintiff is entitled to a mandatory and prohibitory injunction ordering the Defendant to remove the encroachment from the areas of the White Lake Property over which there is no servitude.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, State of Louisiana, prays that Defendant, be served with a copy of the forgoing Complaint and cited to appear and answer same, and after lapse of all legal delays and due proceedings, there be judgment here in favor of Plaintiff and against Defendant, in the form of an Injunction requiring the abatement of the encroachment, removal of the encroaching use of the Defendant, and restoration of the property to its condition before the encroachment began, and for all further relief to which Plaintiff is entitled to under law and equity.

Respectfully submitted:

JEFF LANDRY
ATTORNEY GENERAL


  /s/ Robert E. Couhig Jr.
Robert E. Couhig Jr. (#4439)
Ralph H. Wall (#22667)
Jason A. Cavignac (#27990)
Couhig Partners, L.L.C.
Special Assistant Attorneys General
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *facsimile*

Attorneys for STATE OF LOUISIANA