UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **STATE OF LOUISIANA** | **CASE NO. 6:18-CV-00174** |
| **VERSUS** | **UNASSIGNED DISTRICT JUDGE** |
| **USA** | **MAGISTRATE JUDGE HANNA** |

### REPORT AND RECOMMENDATION

Currently pending is a motion to dismiss, which was filed by the United States of America [Rec. Doc. 19]. The State of Louisiana opposes the motion. [Rec. Doc. 22]. The United States also filed a reply. [Rec. Doc. 25]. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be GRANTED and the State's claims be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

### BACKGROUND

At issue in this case is immovable property, known as the White Lake Wetlands Conservation Area (the "White Lake Property"), in Vermilion Parish, onto which the State alleges the Gulf Intracoastal Waterway ("GIWW") has encroached.

The State acquired title to the White Lake Property on July 8, 2002, and is the record title owner thereof.[1] On February 9, 2018, the State of Louisiana ("the State"), through Attorney General Jeff Landry, commenced this lawsuit seeking injunctive relief against the United States of America ("the United States") for failure to confine the GIWW to the portion of the White Lake Property upon which the United States holds a servitude. On July 31, 2018, an amended complaint was filed, attached to which is a February 26, 1928 agreement (the "Servitude Agreement"), establishing the relevant servitude granted by the State's ancestors-in-title and included in the transfer of the White Lake Property to the State.[2] The amended complaint serves as the operative pleading at issue herein and the basis for the following facts, accepted as true at this stage in the litigation.

In March 1925, the United States Congress approved the River and Harbor Improvements Act (the "Act"), which authorized and appropriated funds for the construction of the GIWW from New Orleans, Louisiana, to Galveston, Texas.[3] In 1928, in furtherance of the congressional mandate expressed in the Act, the United States entered into the Servitude Agreement with the State's ancestors-in-title. Through the Servitude Agreement, and pursuant to Louisiana law, the United States

---

[1] Rec. Doc. 18, p. 3, ¶ 7.
[2] Rec. Doc. 18-1 (Servitude Agreement); Rec. Doc. 18, pp. 5-6, ¶ 14.
[3] Rec. Doc. 18, p. 3, ¶ 9. The United States notes that the correct citation to the Act is the River and Harbor Improvements Act of 1925, Public Law 467, 68th Congress, 2nd Session. *See* Rec. Doc. 25, p. 3, n. 1.

holds a conventional predial servitude across a portion of the White Lake Property.[4] Per the Servitude Agreement, the servitude was to consist of "a strip of land three hundred feet wide," the express purpose of which was to construct, maintain, and operate the GIWW.[5] The original dimensions of the GIWW were to be 9 feet deep by 100 feet wide; however, in October 1942, the United States Congress appropriated funds to expand the dimensions of the GIWW to be 12 feet deep by 125 feet wide.[6]

The relevant servitude was described in the Servitude Agreement as follows:

THAT CERTAIN TRACT OF LAND, situated in the Parish of Vermilion, State of Louisiana, known as the Orange Land Company tract containing some Seventy Thousand acres across and through the Northern portion thereof is hereby granted and donated a strip of land three hundred feet wide with dumping privileges on either or both sides adjoining thereto, as located or to be located by the Engin[e]er in charge; the said three hund[r]ed foot strip to measure one hundred and fifty feet from the [c]enter line North and South according to the Engineer[']s location, the dumping privilege here granted to be without limit. The said three hundred foot strip to begin on the Eastern Line of Section 25, Township 13 South, Range One West, on the Meridian Line North of the center of the Section 25 where a similar strip donated by L.O. Broussard [e]t. [a]ls terminates and runs in a Westerly North westerly direction across the said Section 25, across the Northern part of Section 26 touching Section 23 at its South-west corner and Section 27 at its North-east corner thence across the Southern part of Sections 22, 21 and continuing across Section 20 and Section 19 near the center, continuing in the same direction across the Northern portion of Section

---

[4] Rec. Doc. 18, p. 3, ¶ 10. Louisiana Civil Code article 646 provides that "[a] predial servitude is a charge on a servient estate for the benefit of a dominant estate."
[5] Rec. Doc. 18, p. 3, ¶ 8 and p. 4, ¶ 11.
[6] Rec. Doc. 18, p. 6, ¶ 15. Because the Servitude Agreement contemplated a width of 300 feet, the State explains that no amendment was necessary to accommodate the 1942 expansion, nor was any later expansion granted thereafter. *Id.*

> 24 Township 13 South, Range 2 West, across the North-east corner of Section 23, the South-west corner of Section 14, the Southern part of Section 15, across near the center of Section 17, thence across the Northern portion of Section 18 to the Cameron Parish line at the Northwest corner of Section 18, Township 13, South, Range 2 West, all as per plat of survey, LATEX 4/2 made by William[] P. Kemper July 17th 1926.
>
> . . .
>
> THIS GRANT, transfer and donation is made and accepted for and in consideration of the price and sum of NO DOLLARS and the further benefits to accrue to the grantor in the added convenience for the use of said canal and the enhanced value that will result to adjacent lands, as the result of the construction and maintenance of said canal.[7]

And, pursuant to the Servitude Agreement, the State's ancestors-in-title declared:

> . . . that for the consideration and on the terms and conditions hereinafter expressed she did, and does, by these presents, grant, bargain, give, donate, convey, transfer, assign, set over and deliver unto THE UNITED STATES OF AMERICA, appearing herein through John M.G. Watt[,] its successors and assigns, for its use in constructing, improving and maintaining an Intracoastal Waterway from the Mississippi River at or near New Orleans, La. to Galveston Bay in the State of Texas, in accordance with a project duly authorized by Congress, the perpetual right, servitude or easement to enter upon, dig, excavate or cut away and remove any or all or such of the hereinafter described tract of land as may be required at any time in the prosecution of the aforesaid work of improvement, or any enlargement thereof, and to maintain the portion so cut away and removed as a part of the navigable waters of the United States; and with said grant is also granted the further perpetual right, servitude or easement to enter upon, occupy and use such portion of said tract of land not so cut away and converted into public navigable waters as aforesaid, as may be required for the deposit of dredged material or earth, and for such other purposes as may be needful in the preservation and maintenance of said work of improvement, reserving however to the grantor, her heirs and assigns,

---

[7] Rec. Doc. 18-1, p. 2; Rec. Doc. 18, p. 4, ¶ 12.

> all such rights and privileges in said tract of land as may be used and enjoyed without interfering with or abridging the rights and easements hereby conveyed to THE UNITED STATES OF AMERICA, the tract of land over which servitude is granted[.]⁸

Pursuant to these terms, the United States constructed the GIWW, which has been and continues to be in use by and under the exclusive authority and control of the United States, "pursuant to the permission granted by and under the conditions, limitations, and provisions of the Servitude Agreement."⁹ However, the State alleges that the United States has "the specific, and nondiscretionary legal obligation to restrict and confine its placement and use of any improvements installed in the dominant estate, including the [GIWW], to the area within the 300-foot parcel as described in the Servitude Agreement."¹⁰ The United States, "as the holder of the dominant estate created by the Servitude Agreement, is required to keep the [GIWW] confined to its agreed boundaries and prevent damage to Plaintiff's property[,]" yet it has failed to fulfill its obligation to confine the GIWW and avoid abusing the property rights of the State.¹¹ The State alleges that the GIWW presently exceeds not only the 125-foot width authorized by Congress but also the 300-foot servitude granted by the Servitude Agreement.¹² Through this lawsuit, the State is

---

⁸ Rec. Doc. 18-1, p. 1; Rec. Doc. 18, p. 5, ¶ 13.
⁹ Rec. Doc. 18, p. 6, ¶¶ 16, 17.
¹⁰ Rec. Doc. 18, p. 7, ¶ 18.
¹¹ Rec. Doc. 18, p. 7, ¶¶ 19, 20; *see also* Rec. Doc. 18, pp. 9-10, ¶¶ 27-29 (citing La. Civ. Code arts. 667-669).
¹² Rec. Doc. 18, pp. 7-8, ¶ 21. The State further alleges that "[i]n some areas, the width of the [GIWW] now exceeds 670 feet . . . and it appears to be continually growing larger." *Id.* at ¶ 22.

seeking an injunction "requiring the abatement of the encroachment, removal of the encroaching use of the [United States], and restoration of the property to its condition before the encroachment began, and for all further relief to which [the State] is entitled to under law and equity."[13]

## RELEVANT PROCEDURAL HISTORY

In its original complaint, the State invoked the jurisdiction of this Court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), given that "the matter involves the loss of property resulting from wrongful acts of the federal government under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the law of Louisiana."[14] The United States moved to dismiss and, in the State's opposition thereto, it raised two alternative bases of subject matter jurisdiction, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702.[15] This Court found that the State's arguments were better served by allowing the State to amend its complaint under Federal Rule of Civil Procedure 15, and therefore, denied the original motion to dismiss, without prejudice to the right to re-urge once the State amended its complaint.[16]

---

[13] Rec. Doc. 18, p. 11.
[14] Rec. Doc. 1, p. 2, ¶ 5.
[15] Rec. Doc. 7 (United States' motion to dismiss); Rec. Doc. 11 (State's opposition thereto).
[16] Rec. Doc. 15.

## CONTENTIONS OF THE PARTIES

Through its amended complaint, the State now invokes the jurisdiction of this Court pursuant only to the APA, 5 U.S.C. § 702, "as [the State] has suffered a legal wrong in the form of loss of property arising from inaction on the part of the United States Army Corps of Engineers, and [the State] is not seeking monetary damages, rather injunctive relief."[17] Section 702 provides, in full:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.[18]

The United States moves to dismiss the amended complaint because, although the APA provides a limited waiver of sovereign immunity, the United States argues that

---

[17] Rec. Doc. 18, p. 2, ¶ 5. Hereinafter, the U.S. Army Corps of Engineers will be referred to as the "Corps."
[18] 5 U.S.C. § 702.

express exceptions thereto deprive this Court of subject-matter jurisdiction over the State's claim.[19] The United States points to § 704 of the APA, which provides, in pertinent part, that only "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."[20]

Relying on § 704, the United States argues that this Court lacks jurisdiction, primarily, because an adequate remedy exists elsewhere, namely in the Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). The United States asserts that the State's claim is based upon an alleged breach of the Servitude Agreement, and any judgment against the United States, requiring that it restore the property at issue, would necessarily result in a judgment in excess of $10,000, placing this case within the exclusive jurisdiction of the Court of Federal Claims.[21] For such claims, the Tucker Act allows the "Court of Federal Claims . . . to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[.]"[22] Alternatively, the United States argues

---

[19] Rec. Doc. 19-1, pp. 3, 5.
[20] 5 U.S.C. § 704.
[21] Rec. Doc. 19-1, p. 6. The United States recognizes that the "Little Tucker Act," 28 U.S.C. § 1346, "provides concurrent jurisdiction in the district courts and the claims court for contract claims involving damages of $10,000 or less[;]" however, it argues that any judgment in the State's favor would necessarily exceed $10,000. *See* Rec. Doc. 19-1, p. 6.
[22] 28 U.S.C. § 1491(a)(1). This Court need not address the United States' arguments regarding the Tucker Act and/or Little Tucker Act, given that, in its amended complaint, the State has not invoked this Court's jurisdiction under the Little Tucker Act, and also because this Court finds that the State truly seeks injunctive relief. As the Supreme Court has recognized, both the Court of Claims, and the Tucker and Little Tucker Acts, exist to address monetary, rather than nonmonetary claims. *See United States v. Bormes*, 568 U.S. 6, 11 (2012) ("The Court of Claims was established, and the Tucker Act enacted, to open a judicial avenue for certain *monetary*

that, because there has been no "final agency action" by the Corps, as that phrase has been defined by the Supreme Court, this Court lacks jurisdiction under § 704 of the APA.[23]

The State responds, first, by emphasizing that it "is seeking non-monetary claims in the form of injunctive relief[,]" for which federal jurisprudence has recognized a wide waiver of sovereign immunity created by the 1976 amendment to the APA, particularly § 702.[24] Second, the State differentiates between two distinct types of claims for which § 702 waives sovereign immunity: those where a person suffers a legal wrong because of agency action, and those where a person is adversely affected or aggrieved by agency action within the meaning of a relevant statute.[25] The State contends that the United States' motion addresses only the former, which applies when judicial review is sought pursuant to the general terms of the APA and only to instances involving "final agency action."[26] However, the State argues that its claim falls under the latter category of claims, for which review is sought pursuant

---

*claims* against the United States.") (emphasis added); *see also United States v. Tohono O'Odham Nation,* 563 U.S. 307, 312 (2011) (citing *United States v. Jones,* 131 U.S. 1 (1889) ("claim" in the Little Tucker Act refers only to requests for money); *Bowen v. Massachusetts*, 487 U.S. 879, 880 (1988) (The Claims Court "has no power to grant equitable relief.").
[23] Rec. Doc. 19-1, p. 7.
[24] Rec. Doc. 22, p. 3 (citing *Bowen v. Massachusetts*, 487 U.S. 879 (1988) and *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 672 (6th Cir. 2013)). This Court does not address the State's arguments regarding an agency's burden to show that Congress intended to prohibit *all* judicial review (*see* Rec. Doc. 22, p. 4), because the United States makes no such argument and instead argues that *this* Court lacks jurisdiction over the State's claim.
[25] Rec. Doc. 22, pp. 4-5.
[26] *Id*. at p. 4-5.

to a cause of action arising under or related to a particular statute, not the general terms of the APA, and there is no requirement of "final agency action."[27] Here, the State argues that its claim arises "within the meaning of a relevant statute," namely the Act and amendments thereto, by which Congress authorized the GIWW; therefore, the State need only show the presence of agency action, which includes a failure to act, rather than "final agency action."[28]

In its reply brief, the United States argues, first, that the State seeks more than injunctive relief, given that any "abatement of the encroachment," "restoration of the property," or efforts to prevent future loss of property would necessarily require substantial expenditures from the United States Treasury, if granted.[29] Second, the United States argues that neither the Act nor any amendment thereto provides the State with any statutory right or cause of action, because neither restricted the width of the GIWW, such that the United States has not violated a statutory provision, and the State's reliance on § 702's waiver is misplaced.[30] Third, it is undisputed that the State relies on the Corps' alleged *failure* to act; however, because the Corps is under no statutory obligation to maintain the GIWW, this Court cannot compel the Corps, under § 706 of the APA, to maintain the GIWW.[31] Fourth, the United States argues

---

[27] *Id.* at p. 5.
[28] *Id.* at pp. 6-7.
[29] Rec. Doc. 25, pp. 1-2.
[30] Rec. Doc. 25, pp. 2-4.
[31] Rec. Doc. 25, pp. 5-6 (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004)).

that the State is incorrect in claiming that final agency action is not required when seeking review under § 702, and it has not shown that the Corps' failure to maintain the GIWW within agreed-upon parameters qualifies as final agency action.[32] In conclusion, the United States argues that the State's claim may only be construed as one for breach of the Servitude Agreement or a Fifth Amendment takings claim, either of which would exceed $10,000 and therefore must be brought in the Court of Federal Claims rather than this Court.[33]

## LAW AND ANALYSIS

### I. THE STANDARD FOR RESOLVING A RULE 12(B)(1) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss claims over which the court lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[34] The plaintiff has the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction.[35] A lack of subject matter jurisdiction may be found based on the content of the complaint alone, the complaint supplemented by undisputed facts in the record, or

---

[32] Rec. Doc. 25, pp. 6-7.
[33] Rec. Doc. 25, pp. 7-8.
[34] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).
[35] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014).

the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[36] However, in resolving a motion to dismiss for lack of subject-matter jurisdiction, the court must accept all factual allegations in the plaintiff's complaint as true.[37] "A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of [its] claims entitling [it] to relief."[38]

## II.  SOVEREIGN IMMUNITY IS JURISDICTIONAL

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."[39] "Sovereign immunity is jurisdictional."[40] "It is elementary that the United States, as sovereign, is immune from suits save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[41] "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"[42] "Further, '[w]here the United

---

[36] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[37] *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).
[38] *In re FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012) (citing *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).
[39] *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242, 244 (1940)).
[40] *Cozzo v. Tangipahoa Par. Council--President Government*, 279 F.3d 273, 280 (5th Cir. 2002) (citing *Koehler v. United States*, 153 F.3d 263, 267 (5th Cir. 1998)).
[41] *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.").
[42] *Mitchell*, 445 U.S. at 538 (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed.'"[43]

### III. NO WAIVER OF SOVEREIGN IMMUNITY UNDER APA, § 702

Given that the only waiver invoked by the State is that contained in the APA, 5 U.S.C. § 702, the State must prove that the requirements of § 702 have been met.[44] "Section 702 of the APA 'waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.'"[45]

Although the United States argues that the State seeks more than injunctive relief, given that any "abatement of the encroachment," "restoration of the property," or efforts to prevent future loss of property would necessarily require expenditures from the United States Treasury, this Court is not persuaded. The Supreme Court has recognized that "the crucial question under § 702 is not whether a particular claim for relief is 'equitable' (a term found nowhere in § 702), but rather what Congress meant by 'other than money damages' (the precise terms of § 702)."[46]

---

[43] *Alabama-Coushatta Tribe of Texas v. U.S.,* 757 F.3d 484, 488 (5th Cir. 2014) (quoting *Koehler*, 153 F.3d at 266).
[44] *Alabama-Coushatta Tribe of Texas,* 757 F.3d at 488.
[45] *Id.* (citing *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982); and *Armendariz–Mata v. U.S. Dep't of Justice*, 82 F.3d 679, 682 (5th Cir. 1996) ("Congress intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by § 702 . . . ." (citation omitted))).
[46] *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (citing *Bowen*, 487 U.S. at 895)).

"*Bowen* held that Congress employed this language to distinguish between specific relief and compensatory, or substitute, relief."[47] In *Bowen*, the Supreme Court explained:

> We begin with the ordinary meaning of the words Congress employed. The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled."[48]

Further, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'"[49] Because *Bowen*'s interpretation of § 702 hinged on the distinction between specific and substitute relief, and here, the State is clearly seeking specific rather than substitute relief, this Court finds that the State truly seeks injunctive relief, or "relief other than money damages[,]" under § 702.[50] However, in the Fifth Circuit, that does not end the inquiry under § 702.[51]

---

[47] *Id.* (citing *Bowen*, 487 U.S. at 895); *see also Bowen*, 487 U.S. at 893 ("Our cases have long recognized the distinction between an action at law for damages – which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation – and an equitable action for specific relief – which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions.'") (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949) (emphasis omitted)).
[48] *Id.* (quoting *Bowen*, 487 U.S. at 895 (internal citations omitted)).
[49] *Bowen*, 487 U.S. at 893.
[50] 5 U.S.C. § 702; *see also Blue Fox*, 525 U.S. at 262 (citing *Bowen*, 487 U.S. at 897).
[51] *Alabama-Coushatta Tribe of Texas,* 757 F.3d at 489.

"Section 702 contains two separate requirements for establishing a waiver of sovereign immunity."[52] "These requirements apply to any waiver of sovereign immunity pursuant to § 702."[53]

"First, the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled."[54] The parties do not dispute that the meaning of "agency action," for purposes of § 702, is set forth in 5 U.S.C. § 551(13) and generally includes an agency's "failure to act."[55] Here, "[t]he essence of the State's claim is that the [Corps], has failed to act in its responsibility to maintain the waterway in the agreed to parameters."[56] As explained below, the State has not demonstrated that review is sought pursuant to specific authorization in the substantive statute, and it makes no attempt to demonstrate "final agency action."

Under § 702's second requirement, "the party seeking review . . . must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is

---

[52] *Alabama-Coushatta Tribe of Texas,* 757 F.3d at 489 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)).
[53] *Id.* at 489.
[54] *Lujan*, 497 U.S. at 882.
[55] *Lujan*, 497 U.S. at 882 (quoting 5 U.S.C. § 551(13)); *see also* Rec. Doc. 22, pp. 5, 7; Rec. Doc. 25, pp. 5-6.
[56] Rec. Doc. 22, p. 6; *see also* Rec. Doc. 18, p. 7, ¶ 18 (the "agency action" identified by the State is the United States' failure, through the Corps, to fulfill its "specific, and nondiscretionary legal obligation to restrict and confine its placement and use of any improvements installed in the dominant estate, including the [GIWW], to the area within the 300-foot parcel as described in the Servitude Agreement.").

'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'"[57] As to the former, when review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the "agency action" in question must be "final agency action."[58] As to the latter, the Supreme Court has explained that "to be 'adversely affected or aggrieved . . . within the meaning' of a statute, the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."[59]

Here, the State points to the Act and the amendments thereto, by which Congress authorized and allocated funds for the construction and maintenance of the GIWW, as the only "relevant statute," for purposes of § 702. However, as pointed out by the United States, neither the Act nor any amendment thereto restrict the width of the GIWW or provide the State with *any* statutory right or cause of action.

---

[57] *Lujan*, 497 U.S. at 883 (quoting 5 U.S.C. § 702).
[58] *Lujan*, 497 U.S. at 882 (citing 5 U.S.C. § 704 ("Agency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court are subject to judicial review" (emphasis added)).
[59] *Lujan*, 497 U.S. at 883 (quoting *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 396-397 (1987)). In *Lujan*, the Supreme Court expounded upon this concept by way of the following example: "[T]he failure of an agency to comply with a statutory provision requiring 'on the record' hearings would assuredly have an adverse effect upon the company that has the contract to record and transcribe the agency's proceedings; but since the provision was obviously enacted to protect the interests of the parties to the proceedings and not those of the reporters, that company would not be 'adversely affected within the meaning' of the statute." *Id.* at 883.

Likewise, neither the Act nor any amendment thereto provide for judicial review of the Corps' action or failure to act.[60] The State's claim arises out of an alleged breach of the Servitude Agreement rather than any statutory violation. Since the relevant statute "does not directly provide for judicial review, the APA authorizes judicial review only of 'final' agency action."[61] In such circumstances, "[i]f there is no 'final agency action,' a federal court lacks subject matter jurisdiction."[62]

"Agency action is 'final' if two conditions are satisfied: 'First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'"[63] Here, the State concedes that, when judicial review is sought pursuant to the general terms of the APA, the grant of waiver is limited to instances involving "final agency action." Yet, the State makes no attempt to demonstrate finality or to show that the above conditions have been satisfied. Rather, the State argues "[i]f a

---

[60] "The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004). In the same way that the State has failed to show a statutory right of action, it has likewise failed to demonstrate any statutory obligation, in violation of which the Corps has "unlawfully withheld or unreasonably delayed" agency action.
[61] *Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004); *see also Southern Utah Wilderness Alliance*, 542 U.S. at 61–62 ("Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'") (quoting 5 U.S.C. § 704 (emphasis added)).
[62] *Id.* (citing *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999)).
[63] *Louisiana State v. United States Army Corps of Engineers*, 834 F.3d 574, 580 (5th Cir. 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997) (internal quotation marks and citations omitted)).

litigant has a statutorily created right that it seeks to enforce against the particular agency, it should not have to wait for the agency to decide when it may, or may not act, on its obligation."[64] However, as noted above, the State has failed to demonstrate the existence of a statutorily created right for federal jurisdictional purposes, and therefore, must show final agency action to satisfy the requirements of § 702. Given its failure to do so, this Court lacks jurisdiction over the State's claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that the United States' motion to dismiss for lack of subject matter jurisdiction (Rec. Doc. 19) be GRANTED and further recommends that the State's claims be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

---

[64] Rec. Doc. 22, p. 5.

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[65]

    Signed at Lafayette, Louisiana on November 20, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[65] *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).